228 So.2d 377 (1969)
Edward WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 37316.
Supreme Court of Florida.
April 23, 1969.
*378 James F. Littman and John E. Prewitt, Stuart, for appellant.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
HOPPING, Justice.
The appellant, Edward Williams, was tried and convicted of murder in the first degree. The jury did not recommend mercy. He now appeals.
The facts, briefly, are these. In April, 1962, Lucy Ann Wetherington was found murdered in the restroom of the small office where she was employed in Hobe Sound, Florida. Medical testimony indicated that death was caused by the combined effect of a severe blow to the head and strangulation. Although there were no witnesses to the slaying itself, shortly after the approximate time of death, the victim's employer found the appellant in the office restroom sexually assaulting the victim's body. After a scuffle with the employer and a brief flight, appellant was apprehended. He was tried and convicted. After his first trial the appellant collaterally attacked his conviction and was awarded a new trial pursuant to Criminal Procedure Rule 1 [now 33 F.S.A. Rule 1.850]. See Williams v. State, 184 So.2d 525 (Fla. 4th DCA 1966).
In the instant proceedings appellant was found guilty of first degree murder. The jury did not recommend mercy and the death sentence was imposed. We have carefully considered all of the appellant's assignments of error but see no issues warranting discussion other than the admissibility of certain exhibits into evidence and an allegation that the jury was chosen in a manner violative of the Sixth and Fourteenth Amendments to the United States Constitution. We will dispose of these assignments successively.
Appellant challenges the admissibility of a photograph of the victim at the death scene and a note entered into evidence which was found on his person following his arrest.
The question of the admissibility of photographic evidence, especially in capital cases, has frequently been before this court. Since Mardorff v. State, 143 Fla. 64, 196 So. 625 (Fla. 1940), we have recognized the general principle that photographs are an excellent means of accurately depicting the death scene, and of countering the natural tendency of witnesses to vary in their descriptions of the same view. Over the years we have continually held that when a photograph is relevant, it is admissible, unless what it depicts is so shocking in nature as to overcome the value of its relevancy. See Calloway v. State, 189 So.2d 617 (Fla. 1966).
While the general principles of admissibility are settled, each case requires an independent judgment of the photographs submitted. We find that the picture complained of herein can not be condemned. The view depicted is neither gory nor inflammatory beyond the simple fact that no photograph of a dead body is pleasant. Furthermore, the picture supports much relevant testimony and demonstrates pertinent spatial relationships of the walls and fixtures of the death room to the body of the deceased which was photographed as it was found.
Appellant's offer at trial to stipulate whatever facts such picture might depict was properly refused by the State. An offer of stipulation does not cut off the right of opposing counsel to proceed if such continuation is relevant to proof of the remaining issues of the case.
A small paper note was found on the person of the appellant at the time of his arrest. It was devoid of marking except for two penciled inscriptions: "Mr. *379 Rawls  call office" and the name "Ed Williams." Mr. Rawls was the victim's employer. Ed Williams is the appellant. Competent and unchallenged expert testimony identified both phrases as having been written by the victim. Appellant contends that the lack of any ascribable date on the note rendered it inadmissible, especially since the appellant had been employed several months previously by Rawls, and the note could have been written at any time. The State contends that the note was properly entered for the purpose of showing what the appellant had on his person at the time of his arrest.
We are satisfied that the circumstances cloaked the note with sufficient relevancy to support its entry for the purposes described by the State. The test of admissibility is relevancy. Once admitted, the weight of the evidence is to be determined by the jury. See Williams v. State, 110 So.2d 654 (Fla. 1959).
Appellant's most serious contention is that his right to a fair jury was denied him in the selection of jurors. Specifically, he claims that at least three of the veniremen challenged for cause by the State were excluded simply because they voiced general objections to the death penalty, or expressed conscientious or religious scruples against its imposition.
The exclusion of veniremen for such reasons was recently held unconstitutional as violative of the Sixth and Fourteenth Amendments in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 777 (1968). In Witherspoon, an Illinois Statute provided that cause for challenge in a capital case existed if the prospective juror states "that he has conscientious scruples against capital punishment, or that he is opposed to the same." The United States Supreme Court found that on its face, and also as it had been interpreted by the Illinois courts, the statute authorized the exclusion of jurors who might hesitate to return a verdict inflicting death.
Since a fair cross section of any community's population would presumably reflect many varying views on the imposition of the death penalty, a jury selected pursuant to the Illinois procedure would not be representative, and therefore not impartial, if its members were selected in such fashion as to exclude all who may have a distaste for the ultimate penalty. The United States Supreme Court held that such a jury would fall "woefully short of that impartiality to which defendant is constitutionally entitled on the question of whether the punishment would be death or life imprisonment."
The Witherspoon case, however, makes it equally clear that the State is also entitled to a jury that is similarly impartial and neutral as to penalty. In essence then, Witherspoon recognizes that both the prosecution and the defense in a capital case are entitled to jurors who are impartial as to penalty. A prospective juror is considered impartial, even though he may have a natural bias against capital punishment, so long as his bias is not so strong as to preclude or prevent him from at least considering the issue of punishment. The decision leaves unaffected the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about the wisdom of the death sentence would prevent them from making an impartial decision as to defendant's guilt.
Florida has required recognition of the Witherspoon standard of impartiality for the past one hundred years in both its statutes and its case law. F.S. 932.20, F.S.A., the initial predecessor of which was enacted with essentially the same wording in 1868, specifies:
"No person whose opinions are such as to preclude him from finding any defendant guilty of an offense punishable with death shall be allowed to serve as a juror on the trial of any capital case." (Emphasis supplied.)
*380 In 1881, this court recognized that "the object of this statute is to prevent persons going upon a jury who would refuse from scruples of conscience to find a verdict of guilty, or for some reason other than a want of sufficient proof, and to procure juries who would be governed by their oaths to find according to evidence." Metzger v. State, 18 Fla. 481, 487.
In the 1917 case of Boyington v. State, 74 Fla. 258, 76 So. 774, we interpreted the statute in terms strikingly similar to the essential holding of Witherspoon:
"The statute does not disqualify a person `to serve as a juror on the trial of any capital case' merely because he may have `conscientious scruples against the infliction of capital punishment for murder.' To be disqualified under the statute to serve as a juror in the trial of a capital case, the `opinions' of the person must be `such as to preclude him from finding any defendant guilty of an offense punishable with death.'"
For a more recent decision reiterating the meaning of the statute, see Calloway v. State, 189 So.2d 617 at 620, 621 (Fla. 1966).[1]
In accordance with the above, we have carefully examined all of the voir dire proceedings, giving special attention to the interrogations of the three veniremen appellant contends were dismissed in a manner violative of Witherspoon's proscriptions, by name, Epps, Haslom and Mitchell. We find the appellant's contention to be without merit as to all three prospective jurors.
Mr. Epps it appears from the record, was a friend of appellant and knew his family well. When asked, "Do you think you can sit on the jury and be fair and impartial with this man being a friend of yours?", he replied, "No, I don't think so." At that point the prosecution challenged Mr. Epps for cause. Mr. Epps had been queried on capital punishment previous to this admission, but his answers are difficult to interpret except to say that he admitted that his judgment would be strongly affected by his prior acquaintanceship with the appellant.
Mr. Haslom testified that he was a former employer of appellant's father and a friend of appellant and his family. When asked if he could put friendship aside, he replied that he "guessed" he could. Then the following colloquy occurred:
"Q. (Prosecuting Attorney) If the state proved its case to you beyond a reasonable doubt, and there is no reasonable doubt in your mind the man is guilty, could you vote for a verdict of guilty even though it might mean the electric chair?
"A. (Mr. Haslom) No.
"Q. In other words, you couldn't send him to the electric chair?
"A. No.
"Q. Even though we proved our case to you beyond a reasonable doubt?
"A. No."
It seems clear from Mr. Haslom's negative answers that he was not willing to consider all penalties and that he was committed to vote against the penalty regardless of the facts and circumstances that might be brought out at the trial. By his own admission, if the State were to make its case he could not vote for guilty if it might mean the electric chair.
Upon questioning, Mr. Mitchell said that he did not believe in capital punishment and that he had been raised that way. The State did not challenge this as cause. The *381 challenge was made only after he responded, "No, sir, I wouldn't know. I just wouldn't know." to the question, "If the State proved its case to you beyond a reasonable doubt, could you vote for guilty even though it might mean the electric chair?"
In a recent New Jersey case, State v. Mathis, 52 N.J. 238, 245 A.2d 20 (1968), a similar answer which also led to challenge for cause was analyzed in view of Witherspoon. We find the logic of that court appropriate:
"The State is entitled to a juror who is impartial, i.e., one who is capable of considering whether the death sentence may be meet. Impartiality is a positive attribute. Its presence must appear affirmatively. If a juror, acknowledging racial, religious, or ethnic bias against an accused, is unable to say whether he could or could not judge the case on the merits, he is not an impartial juror * * * who can at least assure the court that he will judge." (Footnote omitted.)
As was said in Witherspoon, "The most that can be demanded of a venireman * * * is that he be willing to consider all of the penalties provided by state law * * *." 391 U.S. at 522, 88 S.Ct. at 1777, n. 21. If, upon questioning, the prospective juror says he doesn't know whether he can vote for conviction if it might mean the electric chair, then the State cannot determine his willingness to consider all penalties, nor can it determine whether or not the venireman's attitude toward the death penalty would prevent him from making an impartial decision as to guilt.
Two other prospective jurors were dismissed by the State for cause because of their avowed opposition to the death penalty, but they were not made the subject of challenge on appeal by the appellant. In both instances, questioning by the prosecution went beyond the mere fact that the venireman was opposed to capital punishment, and continued until it was affirmatively established that the opinions they held were such as to preclude or prevent any consideration of returning a verdict of guilty by the juror if it might mean the imposition of the ultimate penalty. It is difficult to fault this procedure.
If a venireman merely says that he is against the death penalty generally or philosophically he cannot be excused for cause under our statute or Witherspoon's doctrine, unless further examination reveals an intransigent determination not to weigh the evidence presented at trial, or not to return a verdict of guilty when the jury is satisfied of guilt beyond a reasonable doubt, simply because a verdict of guilty by the jury might ultimately result in a death sentence. For voir dire procedure in light of Witherspoon used in other jurisdictions, see: State v. Peele, 274 N.C. 106, 161 S.E.2d 568 at 573 (1968); Commonwealth v. Wilson, 431 Pa. 21, 244 A.2d 734 at 739 (1968); and State v. Mathis, supra.
Having considered the assignments of error and having examined the entire record as required by F.S. 924.32(2), F.S.A., we are satisfied that appellant was justly convicted and the judgment is affirmed.
PER CURIAM.
The foregoing opinion and judgment by HOPPING, J., prepared by him prior to the expiration of his term of Office on January 6, 1969, is hereby adopted as the opinion and judgment of this Court.
It is so ordered.
ERVIN, C.J., and ROBERTS, DREW, CALDWELL (Retired) and ADAMS (Retired), JJ., concur.
THOMAS (Retired), J., dissents with opinion.
*382 THOMAS (Retired), Justice (dissenting).
Because of the irregular manner in which this case was considered I cannot agree to the conclusion reached, so I dissent. It is my view that the matter should be reheard by a panel of seven regular justices.
NOTES
[1] But see State v. Aiken, 72 Wash.2d 306, 434 P.2d 10, at 37-38 (1967) discussing the application of a Washington statute essentially identical with Florida's F.S. 932.20 to challenge for cause. It should be noted that Aiken has been reversed partially on the basis of Witherspoon by Wheat v. Washington, 392 U.S. 652, 88 S.Ct. 2302, 20 L.Ed.2d 1357 (1968).