636 So.2d 1297 (1994)
Charles Harry STREET, Appellant,
v.
STATE of Florida, Appellee.
No. 76928.
Supreme Court of Florida.
March 31, 1994.
Rehearing Denied June 6, 1994.
*1299 Geoffrey C. Fleck of Friend, Fleck & Gettis, South Miami, and Lee Weissenborn, Miami, Sp. Asst. Public Defenders, for appellant.
Robert A. Butterworth, Atty. Gen. and Anita J. Gay, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Charles Harry Street appeals his conviction for first-degree murder and his sentence of death. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Charles Street was released from the Glades Correctional Institution on November 18, 1988. Ten days later, on November 28 at around 2 a.m., Metro-Dade Police Officers Richard Boles and David Strzalkowski responded to a call of someone creating a disturbance near a trailer park. Upon arrival, the officers approached Street who had been the cause of the disturbance. A struggle ensued during which Street took Boles' gun and shot Strzalkowski three times, the final bullet striking him in the head and fatally wounding him. Street then shot Boles three times, ran out of ammunition, and went back to get Strzalkowski's gun. Street pursued Boles, already shot in the chest and face, around Boles' car and shot him one more time in the chest.[1] Street then got into the police car, remarked "now I have got my lift," and proceeded north.[2]
After eluding two pursuing officers, Street parked the police car and approached a man and woman talking. He pointed Boles' shotgun at them, ordered them to give him the car in which the woman was sitting, got in the car and continued to proceed north. Street was again followed by the police when an officer noticed the car traveling without its lights on. Street lost the officer but was eventually apprehended after he pulled off to the side of the road.
After a jury trial, Street was convicted of two counts of first-degree murder, three counts of armed robbery with a firearm, one count of robbery, two counts of armed burglary with a firearm, one count of attempted armed robbery with a firearm, and one count of possession of a firearm in the commission of a felony. The jury recommended death for both murders by a vote of twelve to zero, and the trial court followed this recommendation. The court found three aggravating factors to have been established for both murders, an additional two aggravating factors for the murder of Officer Boles, and *1300 some nonstatutory mitigating factors.[3] Street now appeals, claiming errors in both the guilt and sentencing phases of the trial.
Street raises numerous claims regarding the guilt phase of the trial. Street first argues that the court erred in permitting the State to introduce prior unrelated collateral evidence of the defendant's misconduct that had the effect of making the defendant's propensity for criminal conduct the predominant theme of the prosecution. Much of the evidence about which Street complains was clearly admissible and need not be discussed. However, there was one aspect of Street's argument that deserves consideration.
Street's defense in this case was that he was voluntarily intoxicated through the use of cocaine and that as a consequence he was unable to form the specific intent to commit first-degree murder. In rebuttal the State called Officer DeCarlo who testified that on a prior occasion he and another officer approached Street while he was standing on the sidewalk to arrest him for disorderly conduct. Street began to resist the officers and attempted to pull DeCarlo's gun out of his holster. DeCarlo was able to hold on to his pistol, and the officers were able to subdue Street. DeCarlo, who had extensive police training on the subject of cocaine addiction, expressed the opinion that Street was not under the influence of cocaine at that time.
In Rossi v. State, 416 So.2d 1166 (Fla. 4th DCA 1982), the State introduced evidence of a similar criminal act committed by the defendant ten years before in an effort to negate an insanity defense. In affirming the conviction, Judge Anstead wrote:
In essence appellant's defense in this case was that his actions against the victim resulted from an isolated and temporary mental breakdown. In considering the validity of such assertion we believe the jury was entitled to know that the appellant had engaged in virtually the identical conduct on a prior occasion. This evidence, of course, may give rise to differing inferences. One inference may be that the appellant's conduct, as opposed to being an isolated instance, was merely one episode in a series of wilful actions. Another inference may be that the alleged mental instability of the appellant is one of long standing and the occurrence of the prior episode simply adds credence to its existence. Regardless of these possibly conflicting inferences, however, we cannot accept the appellant's contention that the prior act was not relevant to a determination of his mental state at the time of the subsequent act.
Id. at 1168 (footnote omitted).
In the same vein, we believe that DeCarlo's testimony of an encounter similar to Street's involvement with the officers in the instant case was admissible in rebuttal of the contention that Street's actions were the result of the influence of cocaine.
Street further argues that even if the DeCarlo testimony was admissible, the trial judge erred in refusing to continue the trial so that he could present a witness who would testify that Street was not the aggressor in the DeCarlo encounter. DeCarlo testified on July 16, 1990. The State concluded its other rebuttal testimony at noon on July 19, 1990. At that time defense counsel stated that he had only recently located Terry Hickson who would be able to dispute DeCarlo's version of *1301 the struggle with Street. He requested a continuance until the following day in order that she could testify on surrebuttal. After the State pointed out that defense counsel had known what DeCarlo was going to say for at least two months, that it appeared that Hickson was Street's girlfriend, and that the State had not been furnished her name and address until that morning, the judge denied the motion for continuance. Under the circumstances, we cannot say that the judge abused his discretion in denying the motion for continuance. In any event, even if the court erred in refusing to allow Hickson to testify, the error was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Street also complains that the court unduly restricted the testimony of his addictionologist Dr. Trop. Based on a hypothetical question which included assumptions with respect to Street's behavior on the night of the killings, Dr. Trop was permitted to testify that Street was experiencing cocaine intoxication at that time. He expressed the opinion that the cocaine intoxication lessened Street's capacity to reason, to understand accurately the events going on around him, and to make rational choices. The court properly refused to permit him to testify that Street was suffering the mental infirmity of cocaine psychosis[4] because Street was not raising a defense of insanity. Chestnut v. State, 538 So.2d 820 (Fla. 1989).
The court also refused to allow Dr. Trop to testify that because of his cocaine intoxication Street did not have the mental capacity to premeditate the homicides of Officers Boles and Strzalkowski. Ordinarily, an expert witness would be able to render such an opinion to support the defense of voluntary intoxication. However, in this case there was no evidence that Street had ingested cocaine on the night of the shootings. In fact, an analysis of Street's blood taken several hours after the shootings reflected the absence of cocaine in his bloodstream. The blood did contain evidence of a small amount of a cocaine metabolite known as benzoylecognine, but this only went to prove that Street had taken cocaine some time in the past. Therefore, the court did not err in limiting Dr. Trop's testimony. Holsworth v. State, 522 So.2d 348 (Fla. 1988) (expert testimony as to effect of intoxicants on a defendant's mind is inadmissible absent some proof of ingestion other than defendant's hearsay statements to the expert).
Street's next contention is that the trial judge erred in its handling of juror misconduct and improper comments made by an outsider to the jury. Street complains that the trial court improperly denied defense counsel's request to make an inquiry of the jurors regarding their ability to continue listening to testimony after one juror was observed with his eyes closed during the direct examination of a State rebuttal witness. Instead of granting the request, the judge declared a recess before cross-examination began and after that the trial adjourned for the day. We find no abuse of discretion in the trial court's failure to question the jury about their stamina and ability to continue to listen to testimony. The trial court's exercise of discretion in this matter should not be disturbed absent a showing of bias or prejudice to the defendant, which appellant has not argued or proven. United States v. Hernandez, 921 F.2d 1569, 1578 (11th Cir.), cert. denied, 500 U.S. 958, 111 S.Ct. 2271, 114 L.Ed.2d 722 (1991); United States v. Holder, 652 F.2d 449, 451 (5th Cir.1981); Amazon v. State, 487 So.2d 8, 11 (Fla.), cert. denied, 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986); Ivey v. State, 132 Fla. 36, 45, 180 So. 368, 372 (1938). In any event, defense counsel did not request replacement of the juror with an alternate or make a motion for a mistrial.
Street also complains that a comment made by an outsider and heard by four of the jurors fundamentally corrupted the proceeding. When passing the jury in a hallway, someone uttered the word "guilty." Upon learning of the comment, the judge investigated the incident and individually questioned *1302 the jurors known to have heard the comment. These jurors stated that the comment had not affected their ability to be fair and impartial. The judge inquired of the remaining jurors, collectively, whether they knew of the incident, and none of them indicated any knowledge of it. A motion for mistrial was denied. Given the isolated nature of the incident, we find that the action taken by the trial judge was sufficient to determine whether the jurors were improperly influenced by the comments. See Watson v. State, 270 So.2d 407 (Fla. 3d DCA 1972); see also Scull v. State, 533 So.2d 1137 (Fla. 1988), cert. denied, 490 U.S. 1037, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989) (trial judge adequately conducted individual voir dire of jurors to determine whether they were improperly influenced by witnessing jury foreman embrace victim's mother).
Street claims that the trial court erred in refusing to conduct a Richardson[5] inquiry when the State offered testimony about which Street had no prior knowledge. During his deposition, Officer Steven Anderson of the Metro-Dade Police Department answered all of the questions asked him about his activities at the crime scene. When asked if he did anything else in the case, he replied, "No." In rebuttal to Street's defense that he was paranoid and feared police officers, the State offered testimony by Officer Anderson regarding an encounter he had with Street at the Broward County jail after his arrest. Anderson testified that he had gone to the jail to pick up some items and that as he walked past Street's holding cell, Street glared and smirked at him. Anderson explained that he had not mentioned this at the deposition because he was not asked if he had done anything after he left the crime scene. It is evident that there was no discovery violation. Therefore, a Richardson inquiry was not necessary. Downing v. State, 536 So.2d 189 (Fla. 1988); Matheson v. State, 500 So.2d 1341 (Fla. 1987); Bush v. State, 461 So.2d 936 (Fla. 1984), cert. denied, 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986); Justus v. State, 438 So.2d 358 (Fla. 1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1332, 79 L.Ed.2d 726 (1984). As we explained in Bush:
When testimonial discrepancies appear, the witness' trial and deposition testimony can be laid side-by-side for the jury to consider. This would serve to discredit the witness and should be favorable to the defense. Therefore, unlike failure to name a witness, changed testimony does not rise to the level of a discovery violation and will not support a motion for a Richardson inquiry.
461 So.2d at 938.
Street next contends that the trial court erred in denying his request to treat one of the defense witnesses, Ann Marie Rocco, as an adverse witness. In Rocco's deposition, she described Street's conduct before the murders as "staggering around as if he was drunk." In her trial testimony, however, Rocco testified that Street's conduct was normal, thereby establishing facts affirmatively damaging to Street's defense of intoxication. The trial court denied Street's request that the witness be declared hostile and that he be permitted to put her prior statement before the jury. We agree with Street that Rocco's testimony was adverse. Therefore, under the Florida Evidence Code, Street should have been allowed to offer the prior inconsistent deposition statement to impeach Rocco. See § 90.608(2), Fla. Stat. (1989);[6]Botte v. Pomeroy, 497 So.2d 1275 (Fla. 4th DCA 1986), review denied, 508 So.2d 15 (Fla. 1987). However, we find that the trial court's error in not allowing Rocco to be treated as an adverse witness is harmless because in our review of the record we can say beyond a reasonable doubt that the error did not affect the verdict. DiGuilio, 491 So.2d at 1129.
We deny without comment Street's contentions that (1) the trial court erred in denying a motion for a mistrial based on the prosecutor's comments during closing argument, and (2) the trial court erred in denying a motion *1303 for a mistrial based on the prosecutor's unsubstantiated comments during opening statement.
We now turn to the penalty phase of the trial. Street argues that the trial court improperly allowed the prosecutor to include in his penalty phase closing argument references to and quotes from the Bible. We disagree for several reasons. First, Street did not object to most of the biblical references made by the prosecutor. Because these comments were not such as to constitute the prejudice necessary for a finding of fundamental error, Street is procedurally barred from complaining about them. Freeman v. State, 563 So.2d 73, 76 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2910, 115 L.Ed.2d 1073 (1991). Street did object at trial when the prosecutor made the statement to the jury, "Should we excuse the sinner? Should we thank the sinner? Is that our job; is that our obligation under the law?" However, the trial court correctly overruled the objection because the statement was in rebuttal to the defense counsel's statement, "You will have a unique opportunity to condemn what has happened, to condemn the sin but not condemn the sinner." Secondly, as this Court stated in Paramore v. State, 229 So.2d 855, 860-61 (Fla. 1969), vacated in part on other grounds, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972), "[c]ounsel should not be so restricted in argument as to prevent references by way of illustration to principles of divine law relating to transactions of men as may be appropriate to the case. This is a matter within the discretion of the trial judge... ." (Citations omitted.) As in Paramore, we find that the appellant has failed to show an abuse of the trial judge's discretion. Finally, the record shows that in closing argument defense counsel made several references to the Bible and to divine law. We do not find that the prosecutor's comments improperly affected Street's sentencing.
Street also claims that the jury received an erroneous instruction on the aggravating circumstance of heinous, atrocious, and cruel. The instruction given was the old standard jury instruction declared invalid in Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). Street only sought to have the definitions of heinous, atrocious, or cruel added to the instruction. Thus, the instruction as requested also would have been constitutionally deficient. Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). As a consequence, we find that Street did not preserve the issue for appeal. Roberts v. Singletary, 626 So.2d 168 (Fla. 1993); Johnson v. Singletary, 612 So.2d 575, 577 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 2049, 123 L.Ed.2d 667 (1993). In any event, even if the issue had been preserved, we conclude that the error was harmless beyond a reasonable doubt.
Street also argues that the judge erred in finding that the death of Richard Boles was especially heinous, atrocious, and cruel, and that his murder was committed in a cold, calculated, and premeditated manner. In the finding of heinous, atrocious, or cruel, the judge emphasized the emotional stress which must have been suffered by Boles as he watched his partner being killed with the knowledge that he was next. The judge also pointed out that this killing was wholly unnecessary because Street had already disarmed Boles and had access to the police cars in which he could escape. In the finding of cold, calculated, and premeditated, the judge relied on the fact that Boles' killing was more of an execution type murder in that Street shot Boles three times and upon emptying his firearm obtained another gun and shot him again.
As reprehensible as the murder of Officer Boles may be, we cannot say that the circumstances of his killing meet the definition of either heinous, atrocious, or cruel or cold, calculated, and premeditated. See Rivera v. State, 545 So.2d 864 (Fla. 1989) (defenseless police officer shot three times within sixteen seconds held not to be heinous, atrocious, or cruel or cold, calculated, and premeditated); Brown v. State, 526 So.2d 903 (Fla. 1988) (defenseless police officer shot in the arm who pleads for mercy and is then killed by two shots in the head not heinous, atrocious, or cruel), cert. denied, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 361 (1988); Rogers v. State, 511 So.2d 526 (Fla. 1987) (victim killed by three shots during grocery store robbery not cold, calculated, and premeditated), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
*1304 We note, however, that in the sentencing order the judge indicated that the overwhelming portion of the weight in aggravation came from the three aggravating circumstances found applicable to the deaths of both Boles and Strzalkowski. Upon consideration, we are convinced beyond a reasonable doubt that the finding of the two additional aggravating circumstances with respect to the death of Officer Boles was harmless error. There was no reasonable likelihood of a life sentence being imposed in light of the three valid aggravating circumstances and the minimal amount of mitigating circumstances. See Rogers. We also find the death sentence proportionate to other sentences imposed in this state.
The remainder of Street's penalty phase claims are without merit.[7] Accordingly, we affirm the judgments of guilt and the sentence of death.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] One of the shots was fired with the gun in firm contact with Boles' shirt and pushed under his bulletproof vest.
[2] Earlier that evening at around 6 p.m., the Florida Highway Patrol responded to a call regarding Street, who was kneeling on an interstate overpass with his hands wrapped around the rail. Later that night, just after midnight, Street called "911" to report that he had been poisoned. In both instances, Street stated that he lived in Boynton Beach and was trying to get back home from Liberty City where he had been looking for an ex-girlfriend. Police officers and medi-car personnel responding to the "911" call testified that Street had no symptoms of an illness, refused to go to Jackson Memorial Hospital in Miami, and tried unsuccessfully to convince them to give him a ride to Boynton Beach.
[3] In the sentencing order the trial judge found the following aggravating circumstances to have been established for both murders: (1) Street was previously convicted of violent felonies (in addition to the killing of Officers Boles and Strzalkowski, Street had been previously convicted of battery on a police officer and attempted first-degree murder with a firearm); (2) the murders were committed during a robbery and burglary; and (3) the murders were committed to avoid arrest and to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws, and the victims were law enforcement officers engaged in the performance of their official duties. As to the murder of Richard Boles, the court found the following two additional aggravating factors: (1) the murder was especially heinous, atrocious, or cruel, and (2) the murder was cold, calculated, and premeditated. The court found no statutory mitigating circumstances. However, the court found that the crimes were committed while Street was under the influence of some degree of mental or emotional disturbance. The judge also found that Street had a lack of formal education and training, a low I.Q. (77), and a low level of brain functioning.
[4] On proffer, Dr. Trop said that the vast majority of people with cocaine psychosis did not know right from wrong but indicated that he did not know whether Street fell within this group because he did not examine him.
[5] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[6] In 1990 section 90.608(2) was amended to provide that a party may impeach its own witness, even if not adverse, by introducing prior inconsistent statements. Ch. 90-174, § 1, at 743, Laws of Fla. This change was not in effect at the time of Street's trial.
[7] Street additionally claims that (1) the trial court erred in denying Street's request for a jury instruction regarding consecutive life sentences; (2) Street's sentencing trial was not fair because the prosecutor sought to convince the jury to vote for death so as to keep him from committing other crimes; (3) the trial court erred in allowing the State to present Street's statement from a prior criminal case; (4) the trial court erred in allowing the State to present evidence of the circumstances of Street's prior violent felonies; (5) the trial court erred in denying Street's motion for mistrial when the State repeatedly referred to Street's Cadillacs; (6) the death penalty was imposed in an unconstitutional manner; (7) the jury's sense of responsibility was improperly diluted; and (8) the death penalty is cruel and unusual punishment and violates due process.