GRIFFIN, J.
The State appeals an order granting defendant, Julio Baez-DeLaRosa’s [“Defendant”], motion to suppress statements that he made to law enforcement. The State urges that the trial court erred by granting the motion to suppress because Defendant was not in custody at the time that he made the statements and, thus, law enforcement was not required to give Defendant Miranda[1] warnings. For the reasons that follow, we affirm.
On June 17, 2011, the State charged Defendant through information with one count of sexual activity with a child, while in a position of familial or custodial authority to the child, in violation of section 794.011(8)(b), Florida Statutes; one count of tampering with a witness in violation of sections 914.22(1) and (2)(d), Florida Statutes; one count of lewd or lascivious molestation of a child in violation of section 800.04(5)(c)(2)., Florida Statutes; and one count of child abuse in violation of section 827.03(1), Florida Statutes. These charges arose out of a report by Defendant’s teenaged daughter that, on multiple occasions in the preceding two to three years, her father would force her to allow him to digitally penetrate her vagina, ostensibly *1206 to see if she was still a virgin. Upon receipt of this report, the police interviewed Defendant twice. In the first interview, Defendant denied the allegations and claimed his daughter was lying. On May 16, 2011, he returned to the police department and gave another interview, admitting that, on five or six occasions, he had physically touched his daughter’s vagina to see if she was “wet.”
On December 8, 2011, Defendant filed a motion to suppress statements that he made “during a custodial interrogation conducted by the Apopka Police Department on May 16, 2011.” He asserted:
1. On May 11, 2011, the Defendant, JULIO BAEZ-DE LA ROSA, reported to the City of Apopka Police Department (hereinafter “APD”) in reference to allegations made against him.
2. Before the interview began, Officer Diaz (APD), who served as a Spanish interpreter, read the Defendant Miranda warnings in Spanish from a pre-printed card.
3. The Defendant agreed to speak to the investigating Detective, Andre[2] Parkinson, and denied all of the allegations which were presented to him.
4. On May 16, 2011, the Defendant received a phone call from an unknown caller from an APD phone number.
5. According to the Defendant, the unknown caller indicated that his presence was required at the APD for further questioning.
6. The Defendant appeared at the APD and was further questioned regarding the previously made allegations.
7. Detective Andre Parkinson was present with a Spanish-speaking officer who served as a Spanish interpreter during the questioning and confirmed that the number from which the Defendant received the earlier phone call was in fact an APD phone number.
8. The Defendant made incriminating statements during this interrogation without the benefit of being informed of his constitutional rights.
9. At the end of the interrogation the Defendant was arrested and taken into the custody of the Orange County Jail.
10. There are audio and video recordings for both custodial interrogations.

Argument:

11. The interrogation of the Defendant that took place on May 16, 2011, was a custodial interrogation that required the benefit of Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
12. During the interrogation that took place on May 16, 2011, the Defendant was not advised of his rights a [sic] required by Miranda.
13. The statements made by the Defendant should be suppressed because they were obtained illegally without the knowing, intelligent, and voluntary waiver of the rights enunciated in Miranda. Traylor v. State, 596 So.2d 957 (Fla.1992).
14. This interrogation was conducted in violation of the Fifth and Fourteenth Amendments to the United States Constitution.
15. This interrogation was conducted in violation of Article 1, Section 9 of the Constitution of the State of Florida.
The State filed a response in opposition to Defendant’s motion to suppress on January 20, 2012:
*1207 On May 16, 2011 Defendant went to the police station without police presence, and without being ordered to do so. Defendant voluntarily went into the police station and gave a video and audio recorded confession. Detective Parkinson did not re-issue Miranda warnings. Prior to the May 16th confession at Apopka Police Department, Defendant was never handcuffed, told he was under arrest, or otherwise restrained in his ability to leave.
[[Image here]]
In this case, Defendant was not in custody. He went on his own volition to the Apopka Police Station. It was by coincidence that Detective Parkinson was at the station. Defendant was not transported by law enforcement, and appeared to want to reinitiate contact with Detective Parkinson. The only reason the conversation happened inside the station was so it could be recorded. Defendant was never handcuffed, never told he had to do anything, and there was no show of authority whatsoever toward the Defendant. He was not presented with evidence of his guilt. In fact, the only questions Detective Parkinson asked of him were to the effect of what other information do you have for me, and I heard you were going to confess .... Defendant Baez-de la Rosa came by himself to Apopka Police Department, coincidently met Detective Parkinson in the parking lot, and went inside on his own volition. He was never searched, handcuffed, and therefore his freedom of movement was not curtailed to the degree associated with a formal arrest. He simply went to the police station voluntarily, which both the United States and Florida Supreme Court’s have routinely recognized as not custodial.
Even if this Court finds Defendant was in custody on May 16th suppression of the Defendant’s confession is not appropriate because he had already been issued Miranda warnings and waived them. The Florida Supreme court has held “[t]here is no requirement that an accused be continually reminded of his rights once he has intelligently waived them.” Bush v. State, 461 So.2d 936, 939 (Fla.1984) citing Biddy v. Diamond, 516 F.2d 118, 122 (5th Cir.1975) (lapse of 14 days did not require full recitation of Miranda warnings).
The trial court conducted a three-day hearing on Defendant’s motion to suppress. Jose Diaz, a police officer with the Apopka Police Department [“Officer Diaz”], testified that he was fluent in Spanish, and that his role on May 11, 2011 was “[t]o read [Defendant] the Miranda rights from a prepared card.” He confirmed that after reading “the Miranda warnings,” Defendant agreed to speak with Detective Parkinson.
On cross-examination, Officer Diaz stated that he had a preprinted Miranda rights card that was in Spanish, but that he “didn’t use it” and instead read the rights from a preprinted Miranda rights card that was in English. He confirmed that he had to “interpret the English words into Spanish.”
Andrew Parkinson, a detective [“Detective Parkinson”], testified that on May 11, 2011, he was investigating a case involving Defendant’s alleged sexual activity with his daughter. Detective Parkinson explained that after Defendant was issued Miranda warnings and had agreed to speak with him, he questioned Defendant, detailing the daughter’s allegations; that Defendant denied any sexual wrongdoing with his daughter; and that he let Defendant “return home the same way he came”. He had no contact with Defendant between May 11th and May 16th.
*1208 On May 16th, when Detective Parkinson arrived at work in the morning, the Defendant’s daughter was at the station, waiting for him. She told him that her father was coming in that day to confess. Defendant later appeared at the police station as Detective Parkinson was going to lunch with the rest of his squad. Defendant walked up to Detective Parkinson in the parking lot and said he needed to talk to him. Detective Parkinson patted Defendant down for weapons, took him into the police station and into an interview room so he could record their conversation. He obtained an interpreter for the interview. During that interview, Defendant made the following admissions:
BAEZ: Well, on some occasions when my daughter would run away from home
[[Image here]]
MALE 2: What daughter? What’s her name?
BAEZ: This one, [P.]
MALE 2: Eh, on few occasions when [P.] used to run away from the house She would leave?
BAEZ: Yes, she would leave the house, well, there were several occasions that she left
MALE 2: On various occasions she left the house. Uh-huh
BAEZ: Uh, uh, it’s actually true that I, I checked her whether she had sexual relations
MALE 2:[U/I] He said when ... she, she had run away a few times and he did check her to see if she had any ...
MALE 1: How would he check her?
MALE 2: How did you check her?
BAEZ: I, I checked her to see if she was wet in her parts and she was wet
MALE 2: But how?
BAEZ: I just touched her like this and that’s it
MALE 2: But how? Uh, show me so that ... for me to know
BAEZ: Uh, now like this, I told her to take off her panties and I touched her, I touched her in her parts and saw that she was wet
MALE 2: And ...
BAEZ: And that’s what I ... well ...
MALE 2: He told her to take off her, her pants and with his fingers he touched her to see if she was wet.
MALE 1: So he just touched her to see if she was wet? Didn’t stick his fingers in her?
MALE 2: Did you put your fingers inside of her?
BAEZ: No, on top, only on top when I saw ...
MALE 2: How can you touch on top?
BAEZ: Yes, I mean, if you touch her on top, then you find out, in fact her panties were wet
MALE 1: He just touched her, he said and then he noticed that she was wet and that ... in her bathing suit
MALE 2: Okay, so, has he ever penetrated ... stuck his finger in her?
MALE 1: But you have never touched inside?
BAEZ: No, not inside
MALE 1: No
MALE 2: Why didn’t he ... ask him why he didn’t tell me about this last week
MALE 1: Why didn’t you tell him that, the detective, last week?
BAEZ: What happens is that in a way, look, I wanted to protect my daughter so it wouldn’t ...
MALE 1: He said because he wanted to protect his daughter
BAEZ: So it wouldn’t ... her reputation and all that. The truth I, I didn’t *1209 want for my daughter to be tainted, right? She’s ...
MALE 1: He was trying to protect her reputation, you know, for people to find out and affect the reputation
MALE 2: How many times has he checked her?
MALE 1: How many times did, did you check her?
BAEZ: I don’t know, maybe about six, seven. I don’t know
MALE 1: About six or seven times, approximately
The trial court entered an order on February 27, 2012, granting Defendant’s motion to suppress the statements that he made at the Apopka Police Department. On March 1, 2012, during a hearing, the trial court explained its ruling:
Mr. Baez-De La Rosa, your lawyer has convinced me that I should suppress your confession and statements made to the Apopka Police Department. It was a difficult decision and it could have gone the other way, but I did it. And that works for you. That doesn’t mean the case will be dropped, it just means that that portion of the case will not be heard by the jury.
Now, the Prosecutor, with all due respect to the Court, disagrees with that decision. So he has, as he’s entitled to, filed an appeal on the granting of the motion to suppress. And the thrust of his argument’s [sic] going to be that you’re not in — under custody and you voluntarily said all the things that you’re going to. The problem with it is that the Apopka Police Department can’t figure out how to properly advise someone of their Miranda rights and did it inappropriately during the first interview. But I don’t know that you said anything that was really incriminating to you in the first interview, so that doesn’t really make a whole lot of difference, apparently.
Then when you went in for your second interview, I’m satisfied with your education and your life’s experiences and your lack of understanding of the court system that you believed that you were required to be there. And under the totality of the circumstances I believe that you were effectively in custody. They didn’t give you the Miranda rights in spite of the fact that they knew that you were the only suspect and they knew that you — they thought you were guilty of the offense for which you were in there for the interview.
The State concedes that the Miranda warnings administered to Defendant on May 11, 2011, were inadequate, but contends that Defendant was not in custody on May 16, when he made the incriminating statements. Mainly, the State objects that no member of law enforcement summoned Defendant to the police station that day and that he was not in custody when he was interviewed. The trial court found, however, that Defendant reasonably believed that he had been ordered by the police to appear and be interviewed. This finding is supported by Defendant’s testimony. There is no basis for reversal of the trial court’s decision to suppress Defendant’s statements made on May 16, 2011.
AFFIRMED
ORFINGER, C.J., and EVANDER, J., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Based upon the transcript of the hearing held on Defendant’s motion to suppress, the detective's name is Andrew Parkinson,