378 So.2d 818 (1979)
Walter Robert NEIMEYER, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1247.
District Court of Appeal of Florida, Second District.
December 12, 1979.
As Corrected On Denial of Rehearing January 10, 1980.
*819 Robert O. Bauer, Jr., St. Petersburg, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
DANAHY, Judge.
The question raised by this appeal is whether the trial judge erred in not conducting an adequate hearing pursuant to Richardson v. State, 246 So.2d 771 (Fla. 1971) upon appellant's assertion that the state had not promptly disclosed discovery information as required by Florida Rules of Criminal Procedure 3.220. We hold that the trial judge did err in not conducting an adequate hearing on the discovery violation and, therefore, reverse appellant's manslaughter conviction.
On Christmas Day of 1977 John Stephens was shot to death. Appellant admitted that he killed Stephens, but maintained from the outset that he had done so in self-defense. This theory of defense was at all times fully known to the state and appellant prepared for trial on that basis. The autopsy report showed that Stephens had been shot six times with a .38 caliber handgun and once with a 12 gauge shotgun. Appellant maintained that Stephens had continued to move upright and aggressively toward him even after being shot six times with the handgun, and that it had been necessary to fire the final shotgun blast in self-defense. Thus it was crucial to appellant to establish that the six nonfatal wounds were also nondisabling.
After the information issued charging appellant with manslaughter, the defense requested discovery pursuant to Florida Rules of Criminal Procedure 3.220. The state's response included an autopsy report prepared by Dr. Rehana Newab, an assistant medical examiner. In her pretrial deposition, not yet transcribed by the morning of trial, Dr. Newab indicated there was nothing in her findings inconsistent with the theory that the victim was moving toward appellant when the final shotgun blast was fired. In the course of the deposition defense counsel also elicited the following statements from Dr. Newab:
Q. [Defense Counsel] Let me ask you this. Can you tell me whether or not the victim in this case, Mr. Stevens [sic], was moving at the time that shotgun blast  or is that impossible to tell, medically?
A. I would not be able to say, technically, at the time of the shotgun he was moving or not, but considering the location of the different wounds shot by the .38 caliber, it seemed that he was moving during the fighting that occurred.
Q. In other words, your opinion would be as to the.38 caliber shot he was in all probability in motion. Correct?
A. He was 
Q. He was moving?
A. Right.
Q. But you can or cannot tell at the time of the shotgun blast the 
A. I can not say for sure.

*820 Q. When you performed an autopsy on Mr. Stevens [sic], were you able to determine whether or not he had any pre-existing or existing back injury? Did you notice anything? I didn't see anything in your report.
A. No, I did not notice.
On the morning of trial defense counsel informed the court that the assistant state attorney had called him the night before and advised him that Dr. Newab was prepared to testify at the trial that one of the .38 caliber bullets severed Stephens' spinal cord. A severed spinal cord would have paralyzed Stephens from the waist down, and would have made it impossible for him to be moving toward appellant when the final shotgun blast was fired. Such evidence would eviscerate appellant's defense that the handgun bullets were nondisabling and that he had to fire the shotgun for his own protection.
Defense counsel moved, pursuant to Rule 3.220(j), to exclude this new testimony by Dr. Newab because the state had not made this critical information known previously. He argued that the state had violated the rules of discovery and that this prevented him from properly preparing for trial. After a short hearing the trial judge denied the motion, stating only that he was satisfied the state had not intentionally tried to deceive defense counsel by concealing information from him.
The trial commenced a short time later. During the cross-examination of Dr. Newab, the following testimony was elicited:
Q. [Defense Counsel] Doctor, through your medical findings, can you discount the medical possibility or probability that at the time of this last shotgun wound Mr. Stevens [sic] was on his feet or moving or coming at Mr. Neimeyer?
A. I would not believe that. In my opinion he was unable to move at that point because of the injuries resulting from the previous shot and most likely he was on his knees while this shot was fired.
The defense called Dr. John Feegel, an expert in the field of forensic pathology. Dr. Feegel testified that he had reviewed the autopsy report, that it revealed no basis to conclude Stephens was paralyzed by the nonfatal handgun bullets, and that in his opinion Stephens could have still been advancing towards appellant at the time the shotgun blast was fired. On cross-examination the doctor was asked if his opinion would change if it were shown that Stephens' spinal cord had been severed by one of the .38 caliber bullets. The doctor admitted that this would indeed change his opinion.
After the case was submitted to the jury, the jury reported twice that it could not reach a verdict. Following a final instruction to continue deliberations, the jurors requested that Dr. Newab's testimony be read to them. This was done, and a short time later the jury returned a verdict of guilty.
Defense counsel filed a motion for a new trial, again contending that Dr. Newab should not have been allowed to testify that Stephens' spinal cord was severed by a .38 caliber bullet. At the hearing on the motion the assistant state attorney said that six or seven days before trial he had been notified by Dr. Newab's superior that there might be "some damage to the spinal column which was not reflected in the autopsy report." The assistant state attorney said he met with Dr. Newab the afternoon before trial, and it was then that she said it was her opinion that one of the .38 caliber bullets severed Stephens' spinal cord. The court denied the motion for a new trial, noting that "the prosecution had not willfully withheld information from the defendant and that information was made known to the defendant with reasonable dispatch after the same came into the possession of the prosecutor... ."
Florida Rules of Criminal Procedure 3.220(f) places a continuing duty upon the state to disclose discovery material "promptly". In Cooper v. State, 336 So.2d 1133 (Fla. 1976), the supreme court said:

*821 As the trial date nears, a prosecutor has the duty under Rule 3.220(f) to "promptly disclose" previously unidentified witnesses and material. A delay of days might be sufficiently prompt where several months remain before trial, but where a complex trial involving a human's life is scheduled to begin in one week, immediate disclosure is dictated by the Rule.
Id. at 1137.
In the instant case the assistant state attorney admitted that he was alerted six or seven days before trial to the possibility that Dr. Newab might testify to information bearing critically on appellant's defense which was not included in her autopsy report, and which was at least arguably inconsistent with statements she made during her deposition; yet the defense was not warned of this possibility, even though the trial date was rapidly approaching. Under these circumstances we hold that the state's failure to inform the defense of the new information until the eve of trial was a violation of the discovery obligations imposed on the state by Florida Rules of Criminal Procedure 3.220(f).
Once it is shown that the state has violated the discovery rule, the trial judge is required to conduct an adequate inquiry into all the surrounding circumstances to determine (1) if the violation was willful or inadvertent, (2) whether it was trivial or substantial, and (3) what prejudicial effect, if any, it had on the defense's ability to prepare properly for trial. Richardson v. State, 246 So.2d 771 (Fla. 1971). Only if, after such a full inquiry, it affirmatively appears in the record that the defendant has not been prejudiced by the violation, may the trial judge deny a request for sanctions made under Rule 3.220(j). Otherwise the rule guides the trial judge as to the discretionary orders he may enter to assure the fairness of the trial. The discretion available to the trial judge may not be exercised, however, without first conducting the full inquiry mandated by the Richardson rule. Miller v. State, 373 So.2d 377 (Fla.2d DCA 1979); Thompson v. State, 374 So.2d 91 (Fla.2d DCA 1979).
In the case at bar, the trial judge made no inquiry to determine whether the violation was a substantial one or whether appellant had been prejudiced in his ability to prepare for trial. He determined only that the violation was not willful or unreasonable. We hold that this inquiry was insufficient to meet the Richardson requirements. We are compelled to reverse. In doing so, we observe that at the very least, the circumstances before the trial judge did not establish nonprejudice to appellant. On the contrary, it seems apparent to us that appellant was prejudiced by the tardiness of the state's disclosure. The defense was unable to combat Dr. Newab's testimony because the defense's expert had not examined the victim's body, and neither the autopsy report nor the deposition of Dr. Newab indicated damage to the spinal cord. The jury obviously placed great weight on Dr. Newab's testimony as witnessed by the fact that the jurors requested her testimony be read to them during their deliberations. We need not determine the question of prejudice, however, since we reverse this case for the failure of the trial judge to conduct a full Richardson inquiry.
We note the state has requested that if we find the hearing conducted in the case at bar to be inadequate, we temporarily relinquish jurisdiction to enable the trial judge to make a further Richardson inquiry as was allowed by this court in Smith v. State, 353 So.2d 205, 207 (Fla.2d DCA 1977). Such a posttrial procedure was disapproved by our supreme court in Smith v. State, 372 So.2d 86 (Fla. 1979). Dorsey v. State, 375 So.2d 60 (Fla.2d DCA 1979); Thompson v. State, 374 So.2d 91 (Fla.2d DCA 1979); Miller v. State, 373 So.2d 377 (Fla.2d DCA 1979).
Accordingly, since the inquiry conducted in this case was inadequate under the rule established by Richardson, we reverse appellant's conviction and remand for a new trial.
REVERSED AND REMANDED.
BOARDMAN, Acting C.J., and RYDER, J., concur.