GRIFFIN, Judge.
Earl Jerome Hasty appeals his conviction for purchasing cocaine[1] and carrying a concealed weapon,[2] complaining of several claimed discovery violations. We conclude that one of these violations compels reversal.
Hasty was charged by information on March 1, 1991 with purchasing cocaine and carrying a concealed weapon. Shortly after he was given substitute counsel, defendant gave notice of his intention to participate in discovery under Florida Rule of Criminal Procedure 3.220(a). Among other things, defendant’s notice asked the state to provide defendant with:
1. The names and addresses of all persons known to the prosecutor to have information which may be relevant to the offense charged and to any defense with respect thereto.
2. The statement of any persons whose name is furnished in compliance with the preceding paragraph.
16. Any tangible papers or objects which the prosecuting attorney intends to sue [sic] in the hearing or trial and which were not obtained from or belonged to the accused.
*188 The state filed its first “Answer to Notice of or Demand for Discovery” on April 10, 1991 identifying only one officer it intended to call at trial, the officer who had prepared and signed the probable cause affidavit. The state’s answer also indicated that it intended to call as witnesses other individuals listed on defendant’s “offense report”, but the “offense report” did not contain any names, only a general reference to the Hernando County Sheriff’s Office and the Brooksville City Police Department.
In an addendum to its initial discovery response, filed April 30, 1990, the state provided defendant with the names of the other nine law enforcement personnel involved in the sting operation. One of the men listed was Sergeant A. Arick of the Hernando County Sheriff’s Office. The addendum also notified defendant that the state intended to use as evidence at trial the following: “COPPER TUBE, US CURRENCY, LAB REPORT, SUPPLEMENT REPORT.”
Sergeant Arick, together with Officer Rick Swale, had originally obtained a cocaine “cookie” from the Wildwood Police Department, from which Arick cut the substance that was ultimately sold to defendant. Because the precise sample sold to defendant was never recovered, the state was required to prove by circumstantial evidence the substance he purchased was cocaine.
At Sergeant Arick’s deposition the Friday before trial, he erroneously testified that he had not conducted a “presumptive test” showing that the substance he had received from Wildwood was, in fact, cocaine. During a hearing conducted immediately prior to trial, the state admitted that Sergeant Arick was wrong, and defense counsel was given for the first time an “information report” containing the results of the “presumptive test.” Hasty contends the failure to conduct a Richardson hearing on this discovery violation was per se error and that the trial court erred by permitting Sergeant Arick to testify about his testing of the cocaine ultimately purchased by defendant. We agree.
Immediately before trial commenced, the court held a hearing on several defense suppression motions. One of these was addressed to the inability of the state to prove the substance sold to Hasty was cocaine. The following colloquy took place:
THE COURT: That gets us to the second motion to suppress where there’s an allegation that the State cannot lay a proper predicate to establish that the substances subject to this case were, in fact, contraband. And absent an ability to prove that the chemical or substance, or whatever it was, I assume there’s going to be some testimony at some point that something transferred between the parties, if the State can’t prove that it was contraband, then it probably should not be introduced, or any testimony regarding it be introduced.
PROSECUTOR: We would submit the State can without any difficulty. One thing that Mr. Harp asked for Friday from Sergeant Arick, even though the paperwork with regard to the Court’s order of seizure of the cocaine that was placed into Hernando County Sheriff’s Office was sealed, I can’t provide him with a copy of that order. I’ve got the information report that talks about how the cocaine originally that they used for the reverse sting was taken into custody with Hernando County Sheriff’s Office—
THE COURT: I’m assuming somewhere or other you’ve got some expert to say, yeah, this is crack cocaine.
PROSECUTOR: Yes. Basically, I would proffer to the Court, we do have a chain of custody established that, as a matter of fact, this particular rock was either lost or swallowed by Mr. Hasty at the scene, but that another chip from what they call, commonly call the “cookie” that was taken in the seizure, and the order was signed by the Court, was taken, a piece of it was taken to the lab and analyzed to be cocaine.
Further, one of the things that Sergeant Arick had said, that he didn’t believe Friday when Chip talked to him informally, a presumptive test had been done. A presumptive test had been done *189 on that before. That was one thing Mr. Harp didn’t have the benefit of, but the information report—
THE COURT: The State’s position is, yes, you can in fact establish that it was contraband by competent evidence, including chain of custody?
PROSECUTOR: That’s correct, Your Honor.
DEFENSE COUNSEL: Do you have paperwork showing that, because he told me there was no presumptive test?
PROSECUTOR: Right, and Mr. Harp is correct that he did tell him that. He did not recall it, but the paperwork will document it.
THE COURT: All right.
DEFENSE COUNSEL: Have I been given the paperwork?
PROSECUTOR: I’m going to hand you his information report as well as his — he asked for a list of all who were involved in the surveillance, actual surveillance, back-up and support. He provided that also for Mr. Harp.
THE COURT: All right. That motion then, Mr. Harp, I’ll allow you to — I’ll just keep it open if you wish, but I’m not going to grant it based on what’s been placed before the Court at this point. I think it’s a legitimate issue. The State obviously has that burden. If they don’t meet the burden, I assume you would renew that motion before the Court.
DEFENSE COUNSEL: That’s correct.
THE COURT: Very well.
All right. Motion for sanctions I’ve reviewed, and I’ll deny that at this point for reasons previously stated on the record.
At trial, when the state attempted to question Arick concerning the cocaine “cookie” obtained from Wildwood, defense counsel again objected because of the discovery violation. The court overruled the objection, finding that no discovery violation had occurred:
THE COURT: That’s not relevant and material, I don’t think. I’ll allow the question. I think that it’s an appropriate question. I don’t perceive it as a violation of discovery at this point. This witness has been known to the defense for quite some time.
Defense counsel responded:
DEFENSE COUNSEL: Has been known to what, Judge?
THE COURT: To the defense for quite some time.
DEFENSE COUNSEL: You’re talking about Friday, the Friday before trial.
THE COURT: I said this witness has been known to the defense for quite some time. The witness has been known.
DEFENSE COUNSEL: I’ve known of the witness, yeah.
THE COURT: Okay. I’ll overrule the objection.
DEFENSE COUNSEL: But for the record purpose, I did not know about this.
The state was then permitted to establish that Arick had obtained the cocaine from Wildwood pursuant to a court order, that he had conducted a “presumptive test” the day he had received it which indicated the substance was cocaine, that some of this substance had been sold to defendant, and that a test after the sale indicated the remaining substance was cocaine.
Defendant correctly argues that Arick’s failure to disclose the existence of the “presumptive test” prior to trial was a discovery violation. Information in the possession of a police officer is in the constructive possession of the prosecutor. Griffis v. State, 472 So.2d 834 (Fla. 1st DCA 1985); Neimeyer v. State, 378 So.2d 818 (Fla. 2d DCA 1979). Although defense counsel did not attempt to depose Arick until shortly before trial, it was not defense counsel’s fault that the state’s witness, even at that late date, could not accurately testify, or that the report had not been provided sooner. The result was that defense counsel was given erroneous information on a key issue that was not corrected until immediately prior to trial. The trial judge thus erred in concluding there had been no discovery violation. Moreover, the trial court was bound to conduct an appropriate Richardson hearing to deter *190 mine whether the violation was wilful or inadvertent, whether the violation was trivial or substantial and what effect it had on the defendant’s ability to prepare for trial. The failure to do so is per se error. Smith v. State, 500 So.2d 125 (Fla.1986); Neskovski v. State, 568 So.2d 468 (Fla. 5th DCA 1990). Finally, while the other discovery “delays”, “omissions” and “misdirections” of which appellant complains do not meet the per se error test, their cumulative weight reinforces our conclusion that the per se error warrants a new trial in this case.
REVERSED and REMANDED.
COBB and W. SHARP, JJ., concur.

. §§ 893.03(2)(a)4 and 893.13(l)(a)l, Fla.Stat. (1989).

. § 790.01(1), Fla.Stat. (1989).