770 So.2d 1174 (2000)
STATE of Florida, Petitioner,
v.
Bernard EVANS, Respondent.
No. SC94673.
Supreme Court of Florida.
October 5, 2000.
*1175 Robert A. Butterworth, Attorney General, Michael J. Neimand, Bureau Chief, Criminal Appeals, and Lara J. Edelstein, Assistant Attorney General, Fort Lauderdale, Florida, for Petitioner.
John H. Lipinski, Miami, Florida, for Respondent.
*1176 LEWIS, J.
We have for review the Third District Court of Appeal's decision in Evans v. State, 721 So.2d 1208 (Fla. 3d DCA 1998), which expressly and directly conflicts with our decision in Bush v. State, 461 So.2d 936 (Fla.1984), regarding whether nondisclosure of changed testimony can constitute a discovery violation requiring a Richardson[1] hearing. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. As more fully explained below, we approve the decision in Evans and clarify our statements in Bush regarding the nondisclosure of changed testimony.

I. BACKGROUND
The State of Florida (the State) charged Bernard Evans (Evans) with second-degree murder and unlawful possession of a firearm while engaged in a criminal offense. Both charges related to the death of Thaddeus Scott (Scott), whose death resulted from multiple gunshot wounds. Prior to trial, the State identified Sylvia Kennedy Green (Green) as a witness in the case. In a statement given to the police shortly after the crime occurred, Green indicated that she "didn't see anything" with regard to the alleged criminal event. Similar to her police statement, Green did not indicate in a deposition taken by defense counsel that she had seen Evans shoot Scott.
At trial, however, Green testified on direct examination presented by the State that during a conversation she had with Evans the night before the shooting, Evans threatened to kill Scott. Green also testified during direct examination that she had actually seen Evans shoot Scott and she described the events. In describing the shooting, Green testified that she did not see Scott attack Evans, which directly contradicted Evans' statement to a police detective that he shot Scott only after Scott had attacked him.[2] Green indicated that she had provided this new and different version of events to the police about one month before trial, and she admitted that she had lied in her initial statement to the police and also during her pretrial deposition testimony.
Defense counsel objected to the changes in Green's testimony on several occasions, but the trial court overruled those objections. At a side-bar conference during Green's direct examination by the State, defense counsel indicated that "we've been surprised by [Green's] direct testimony, for what [s]he's been talking about for the last hour didn't come up in her deposition." Further, after clarifying the exact scope of the changes in Green's testimony at the beginning of cross-examination, defense counsel asserted that the State had engaged in "prosecutorial misconduct" by failing to disclose prior to trial the changes in Green's testimony. Defense counsel moved for a mistrial based on the lack of disclosure, but the trial court did not rule on the motion at that time because it was focusing on another legal issue. Later during cross-examination (during another side-bar conference), defense counsel again expressed that it was unfair for the State to withhold from the defense the changes in Green's testimony.
After the State had concluded its case-in-chief and rested, defense counsel renewed the motion for mistrial based on the State's failure to disclose the changes in Green's testimony, but the trial court denied the motion. The defense rested its case after presenting no witnesses and then specifically requested that the court conduct a Richardson hearing concerning Green's changed testimony. The trial court conducted a hearing at that time and found that the State had not committed a discovery violation, and the court again overruled the defendant's motion for mistrial. Thereafter, the jury returned a verdict finding Evans guilty of second-degree *1177 murder with a firearm,[3] and the trial court denied a motion for new trial filed by Evans in which he again sought relief asserting, in pertinent part, Green's changed testimony. The trial court proceeded to sentence Evans to fifteen years in prison with a three-year mandatory minimum term for use of a firearm. Evans appealed.
On appeal, the Third District reviewed Green's testimony and found that the trial court failed to conduct a Richardson hearing upon being advised that Green had changed her testimony. See Evans, 721 So.2d at 1210. The Third District also determined that when the trial court did conduct a Richardson hearing, the hearing was inadequate. See id. The court reasoned that the questions posed by the prosecutor during Green's direct examination clearly showed that the State was aware of the changes in Green's testimony, and held that "in failing to disclose the change in testimony to the defense, the State failed to meet its obligations under Rule 3.220(j) [of the Florida Rules of Criminal Procedure]." Id. After finding that the State's discovery violation in Evans' case "was substantial and undeniably had a negative effect on defense counsel's ability to properly prepare for trial," the court reversed Evans' conviction and remanded for a new trial. See id. We accepted review based on express and direct conflict between the decision below and Bush, and we now address the conflict issue.[4]

II. ANALYSIS
The conflict issue in this case stems from this Court's statements in Bush with regard to whether nondisclosure of changed testimony can constitute a discovery violation. In Bush, a jury found the defendant guilty of first-degree murder, robbery with a firearm, and kidnapping in relation to the abduction and death of a convenience store clerk. See 461 So.2d at 937-38. After being sentenced to death on the first-degree murder charge, the defendant directly appealed to this Court. See id.
On appeal, the defendant asserted that the trial court should have either conducted a Richardson hearing or granted a mistrial because a state investigator's trial testimony contradicted his pretrial deposition testimony. See id. at 938. Specifically, the investigator testified in a pretrial deposition that a clerk from a nearby convenience store-which had been visited by the defendant-did not identify any photographs of the defendant during a photo lineup. See id. At trial, however, the investigator changed his prior testimony and testified that the store clerk did identify the defendant's photograph during a photo lineup. See id. After considering the defendant's arguments, this Court held that "[t]he prosecutor's failure to inform the defense of this change of testimony is not a discovery violation and does not constitute the absolute legal necessity required for a mistrial." Id. In so holding, this Court reasoned:
When testimonial discrepancies appear, the witness' trial and deposition testimony can be laid side-by-side for the jury to consider. This would serve to discredit the witness and should be favorable to the defense. Therefore, unlike failure to name a witness, changed testimony does not rise to the level of a discovery violation and will not support a motion for a Richardson inquiry. *1178 Id.; see also Johnson v. State, 696 So.2d 326, 333 (Fla.1997) (reciting language in Bush in analyzing changed testimony issue); Street v. State, 636 So.2d 1297, 1302 (Fla.1994) (same).
Superficially, this Court's statements in Bush would seemingly preclude relief in cases such as this. Specifically, although the changed testimony at issue in this case differs significantly in nature and degree from the changed testimony considered in Bush, those differences do not negate this Court's statement in Bush that "unlike failure to name a witness, changed testimony does not rise to the level of a discovery violation and will not support a motion for a Richardson inquiry." 461 So.2d at 938. After considering this Court's statements in Bush along with Florida Rule of Criminal Procedure 3.220, other relevant case law, and the facts of this particular case, we find it necessary to further clarify the statements in Bush with regard to whether nondisclosure of changed testimony prior to trial can constitute a discovery violation.
Florida Rule of Criminal Procedure 3.220 sets forth the guidelines governing discovery in Florida criminal proceedings. Subdivision (a) of that rule provides in pertinent part:
(a) Notice of Discovery. After the filing of the charging document, a defendant may elect to participate in the discovery process provided by these rules, including the taking of discovery depositions, by filing with the court and serving on the prosecuting attorney a "Notice of Discovery" which shall bind both the prosecution and defendant to all discovery procedures contained in these rules. Participation by a defendant in the discovery process, including the taking of any deposition by a defendant ... shall be an election to participate in discovery and triggers a reciprocal discovery obligation for the defendant.
Fla. R.Crim. P. 3.220(a).[5] The record in this case does not reflect whether Evans filed and served a "Notice of Discovery," but the record does show that he (1) filed two separate motions requesting that the court order the State to provide him with any criminal records of the victim; and (2) conducted at least one deposition. See id. Thus, it is clear that the provisions of rule 3.220 apply in this case.
Substantively, Florida Rule of Criminal Procedure 3.220(b)(1)(C) requires the State to disclose to a criminal defendant "the substance of any oral statements made by the defendant," and rule 3.220(j) provides:
(j) Continuing Duty to Disclose. If, subsequent to compliance with the rules, a party discovers additional witnesses or material that the party would have been under a duty to disclose or produce at the time of the previous compliance, the party shall promptly disclose or produce the witnesses or material in the same manner as required under these rules for initial discovery.
Fla. R.Crim. P. 3.220(j). Numerous Florida decisions have addressed the portion of rule 3.220 relating to disclosure of the substance of oral statements made by a defendant, and the courts issuing those decisions have uniformly stressed the State's continuing duty to disclose the substance of oral statements made by the defendant. See, e.g., Reese v. State, 694 So.2d 678, 682 (Fla.1997); Delgado v. State, 706 So.2d 328, 329 (Fla. 1st DCA 1998); Mason v. State, 654 So.2d 1225, 1226-27 (Fla. 2d DCA 1995); Brown v. State, 640 So.2d 106, 106-07 (Fla. 4th DCA 1994); McCray v. State, 640 So.2d 1215, 1217 (Fla. 5th DCA 1994); cf. Collins v. State, 671 So.2d 827, 828 (Fla. 2d DCA 1996) (reversing and remanding for an evidentiary hearing to ascertain whether the defendant's trial counsel was ineffective for not objecting to the State's failure to disclose the substance of the defendant's oral *1179 statement). Of particular importance is this Court's decision in Reese.
In Reese, the defendant challenged a trial court finding that no discovery violation had occurred when a police detective testified at trial that the defendant made a statement at the time of the crime, when such statement had not been disclosed to the defense prior to trial. See 694 So.2d at 681. The police detective's notes did not refer to the defendant's alleged statement, and the detective did not mention the alleged statement during his deposition. See id. The trial court conducted a Richardson hearing upon being advised of a possible discovery violation, but after conducting the hearing, the court found that no discovery violation had occurred and thus declined to exclude the detective's trial testimony regarding the defendant's alleged statement. See id. at 681-82.
On appeal, this Court disagreed with the trial court's determination that no discovery violation had occurred. See id. at 682-83. After reviewing the colloquy from the Richardson hearing, this Court stated:
[T]he transcript of the hearing reflects that the judge decided that there was a failure to disclose "critical" information contained in the defendant's oral statement. The hearing established that the information was not only in the detectives' minds, but known to the State Attorney's Office as well. Contrary to what the state asserts, Florida Rule of Criminal Procedure 3.220, makes it clear that the state's duty to disclose the substance of the defendant's statement here is an affirmative one and not a defense burden.
Id. Thus, this Court clearly determined in Reese that the State had committed a discovery violation by failing to inform the defense about an oral statement allegedly made by the defendant to the police detective, the substance of which was not contained in the detective's notes or deposition testimony. See id.[6]
The facts in Reese are similar to the facts in this case, because Green revealed to the defense for the first time during her trial testimony a statement allegedly made by Evans the night before the shooting. Green's trial testimony regarding such statement differed significantly from the information contained in both her initial statement to the police and her deposition testimony, and therefore could be construed as simply "changed testimony" as that phrase is used in Bush. Thus, while it is clear that our decision in Reese impliedly recognized an exception to the "changed testimony" statements in Bush, we now find it necessary to clarify that our statements in Bush regarding "changed testimony" certainly cannot be extended to situations where the changes in a witness's testimony include a reference to an oral statement allegedly made by the defendant.
In cases such as this, where the State fails to disclose to the defendant, prior to trial, the substance of any oral statement allegedly made by the defendant, then the State has committed a discovery violation and the trial court must conduct a Richardson hearing upon learning of the possible violation. As the Third District correctly determined in the decision below, see Evans, 721 So.2d at 1209, the State clearly knew that Green would testify that Evans allegedly made an oral statement on the night before the shooting which, in substance, was a threat to kill the victim, Scott. Thus, the State committed a discovery violation by failing to provide Evans with the substance of that oral statement, and the trial court abused its discretion in finding otherwise. See Pender v. State, 700 So.2d 664, 667 (Fla.1997) ("[W]here a trial court rules that no discovery violation occurred, the reviewing *1180 court must first determine whether the trial court abused its discretion.").
Much as rule 3.220(b)(1)(C) requires the State to provide to the defendant "the substance of any oral statements made by the defendant," subdivision (b)(1)(B) of the rule requires the State to disclose to the defendant "the statement of any person whose name is furnished in compliance with the preceding subdivision." Fla. R.Crim. P. 3.220(b)(1)(B). The "preceding subdivision" referred to in rule 3.220(b)(1)(B) requires the State to disclose to the defendant "a list of names and addresses of all persons known to the prosecutor to have information that may be relevant to any offense charged or any defense thereto." Fla. R.Crim. P. 3.220(b)(1)(A). Rule 3.220(b)(1)(B) then proceeds to define the term "statement" to include:
A written statement made by the person and signed or otherwise adopted or approved by the person and also includes any statement of any kind or manner made by the person and written or recorded or summarized in any writing or recording. The term "statement" is specifically intended to include all police and investigative reports of any kind prepared for or in connection with the case, but shall not include the notes from which those reports are compiled....
Courts construing rule 3.220(b)(1)(B) have determined that the State is not required to disclose to the defendant a witness's oral statement when such statement has not been reduced to writing or recorded in a manner prescribed by the rule. See, e.g., Olson v. State, 705 So.2d 687, 690-91 (Fla. 5th DCA 1998) (stating that the clear implication of rule 3.220(b)(1)(B) is that witness statements "if not written or recorded, are not discoverable"); Johnson v. State, 545 So.2d 411, 412 (Fla. 3d DCA 1989) (determining that State was not required to disclose to the defendant an oral, unrecorded statement made by a state witness to the prosecutor); Whitfield v. State, 479 So.2d 208, 215-16 (Fla. 4th DCA 1985) (determining that witness's oral statements to prosecutor after suppression hearing were not discoverable, in part because such statements were not written or recorded); cf. Watson v. State, 651 So.2d 1159, 1163-64 (Fla.1994) (determining that oral statement made by State's expert witness was not discoverable, as it was not a "statement" as defined in rule 3.220(a)(1)(ii) (1988), the predecessor to current rule 3.220(b)(1)(B)). Several courts have determined, however, that the State must disclose to the defendant a witness's oral statement in circumstances where the oral statement materially alters a prior written or recorded statement previously provided by the State to the defendant. The leading case standing for such proposition is Jones v. State, 514 So.2d 432 (Fla. 4th DCA 1987).
In Jones, the State charged the defendant with second-degree murder and false imprisonment based upon the shooting death of the victim. See id. at 433. After the defendant invoked the discovery provisions of rule 3.220, the State identified Victor Hendley as a witness and furnished the defendant with a sworn statement given by Hendley shortly after the shooting. See id. In the statement, Hendley asserted that the victim said, "Man, you done shot me." Id. During opening statement at trial, however, the prosecutor indicated that Hendley would be testifying that the victim said, "Red, not [sic] me." Id. (notation of error in original). Defense counsel moved for a mistrial on the basis that the State had failed to disclose to the defendant prior to trial that Hendley would testify to such statement being made by the victim. See id. During a colloquy, it became clear that Hendley had told the prosecutor at least one week prior to trial that Hendley would testify about the victim's dying declaration identifying "Red." See id. 433-34. After conducting the colloquy, the trial court denied the defendant's motion for mistrial. See id. at 433.
On appeal, the Fourth District addressed "whether the state has a continuing *1181 duty under Rule 3.220(f) [the predecessor to current rule 3.220(j)] to notify the defendant when a witness informs the state of his intention to materially alter information contained in a sworn statement furnished by the state to the defendant." Id. After considering the State's duty to provide the defendant with any written or recorded statement of a witness, as well as the continuing duty of disclosure under the discovery rules, the Fourth District held that "a material discovery violation occurred when the state did not inform appellant that the witness Hendley would testify that the decedent identified appellant as the person who had shot the decedent." Id. at 435. In so holding, the Fourth District distinguished its prior decision in Whitfield, where it had determined that a witness's oral statements made to the prosecutor after a suppression hearing were not discoverable, in part because such statements were not written or recorded. The Jones court reasoned:

Whitfield did not involve a change in information furnished pursuant to Rule 3.220. However in this case, the state made discovery pursuant to the defendant's request and furnished the defendant with Hendley's sworn statement pursuant to Rule 3.220(a)(1)(ii). We think the court in Neimeyer [v. State, 378 So.2d 818 (Fla. 2d DCA 1979) ] correctly concluded that once discovery has been made to a defendant that the state has a continuing duty under Rule 3.220(f) to notify the defendant of a substantial and material change in the report or as in this case in a witness statement containing an important factual scenario.
Jones, 514 So.2d at 435.[7]
Similar to the Fourth District's decision in Jones, the Second District determined in Neimeyer v. State, 378 So.2d 818 (Fla. 2d DCA 1979), that the State had committed a discovery violation by not disclosing to the defendant information that materially altered a prior autopsy report provided by the State to the defendant. See 378 So.2d at 820-21. Specifically, the medical examiner in Neimeyer did not indicate in either an autopsy report provided to the defendant or in a pretrial deposition that the victim's spinal cord may have been severed by one of the bullets fired by the defendant. See id. Such information was critical to the defendant's case because he claimed that he shot the victim in selfdefense during a continuing attack by the victim. See id. at 819. Approximately one week before trial, however, the medical examiner's supervisor notified the prosecutor that there might have been some damage to the victim's spinal cord not reflected in the autopsy report. See id. at 820. Further, on the day before trial, the medical examiner told the prosecutor that, in her opinion, one of the bullets severed the victim's spinal cord. See id. In holding that the State had committed a discovery violation, the Second District stated:
In the instant case the assistant state attorney admitted that he was alerted six or seven days before trial to the possibility that Dr. Newab might testify to information bearing critically on appellant's defense which was not included in her autopsy report, and which was at least arguably inconsistent with statements she made during her deposition; yet the defense was not warned of this possibility, even though the trial date was rapidly approaching. Under these circumstances we hold that the state's failure to inform the defense of the new *1182 information until the eve of trial was a violation of the discovery obligations imposed on the state by Florida Rules of Criminal Procedure 3.220(f).
Id. at 821; cf. Alfaro v. State, 471 So.2d 1345, 1346 (Fla. 4th DCA 1985) (endorsing opinion in Neimeyer in holding that State committed discovery violation by not disclosing to the defendant that county medical examiner performed last-minute accident reconstruction).
Consistent with the decisions in Jones and Neimeyer, we determine that the State committed a discovery violation in this case by withholding from the defense the fact that Green had changed her original police statement[8] to such an extent that she transformed from a witness who "didn't see anything" into an eye-witness-indeed, apparently the only eye-witness-to the shooting. "Florida's criminal discovery rules are designed to prevent surprise by either the prosecution or the defense. Their purpose is to facilitate a truthful fact-finding process." Kilpatrick v. State, 376 So.2d 386, 388 (Fla.1979). In essence, the State's nondisclosure of the changes in Green's testimony from her original police statement was tantamount to failing to name a witness at all. Accord Mobley v. State, 705 So.2d 609, 611 (Fla. 4th DCA 1997) ("The State's disclosure of an eyewitness on the morning of trial can hardly be considered trivial in light of the significance of eyewitness testimony in a case ... where the defendant claims that she acted in self-defense and the case essentially boiled down to conflicting versions of what occurred."); McArthur v. State, 671 So.2d 867, 870 (Fla. 4th DCA 1996) ("Furnishing misleading or inaccurate discovery is tantamount to providing no discovery at all and may constitute a violation of the discovery rules."). To the extent that our determination here may be interpreted as being inconsistent with our "changed testimony" statements in Bush, we clarify that our statements in Bush do not control in situations where the State provides the defendant with a witness's "statement"-as that term is defined in rule 3.220(b)(1)(B)and thereafter fails to disclose to the defendant that the witness intends to change that statement to such an extent that the witness is transformed from a witness who "didn't see anything" into an eyewitness who observed the material aspects of the crime charged.
With the above determinations in mind, we agree with the Third District that the trial court in this case failed to conduct a timely Richardson hearing upon being advised that the State had committed a possible discovery violation. Specifically, during the State's direct examination of Green, defense counsel alerted the trial court that Green's trial testimony differed in several respects from her pretrial statements, and the prosecutor's questioning of Green clearly indicated that the State knew of the changes in Green's testimony. Further, after clarifying the scope of the changes in Green's testimony at the beginning of cross-examination, defense counsel moved for a mistrial on the basis that the State had engaged in "prosecutorial misconduct" by failing to disclose prior to trial the changes in Green's testimony. Although defense counsel did not specifically request that the trial court conduct a Richardson hearing until after the defense rested its case, the trial court nevertheless was required to conduct a Richardson hearing upon being advised of a possible discovery violation. See, e.g., Copeland v. State, 566 So.2d 856, 858 (Fla. 1st DCA 1990) ("There are no exact `magic words' or phrases which must be used by the defense in order to necessitate the inquiry *1183 but only the fact that a discovery request has not been met.").
We also agree with the Third District that when the trial court did conduct a Richardson hearing, such hearing was inadequate. During a Richardson hearing, the trial court must inquire as to whether the violation (1) was willful or inadvertent; (2) was substantial or trivial; and (3) had a prejudicial effect on the aggrieved party's trial preparation. See, e.g. Delgado v. State, 706 So.2d 328, 329 (Fla. 1st DCA 1998) (citing Richardson). The trial court in this case did not inquire into any of the above factors because the court abused its discretion in finding that no discovery violation had occurred. See Pender, 700 So.2d at 667 (providing that reviewing court must utilize abuse of discretion standard in considering the validity of a trial court's determination regarding alleged discovery violation).
Finally, we determine that the State's failure in this case to disclose both the substance of the oral statement allegedly made by Evans and the transformation of Green into an eyewitness was harmful because we cannot say beyond a reasonable doubt that the defense was not procedurally prejudiced by the violation. See State v. Schopp, 653 So.2d 1016, 1021 (Fla.1995) ("[O]nly if the appellate court can say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation can the error be considered harmless."). As aptly stated by the Third District in the decision below:
[T]he violation here was substantial and undeniably had a negative effect on defense counsel's ability to properly prepare for trial. At the time defense counsel was preparing for trial and assessing the evidence against his client, there were no eyewitnesses. Green's changed testimony immediately changed the type of case defense counsel was dealing with. With an eyewitness to the crime, defense counsel's strategy would surely be different.
Evans, 721 So.2d at 1210.
Accordingly, based on the above, we approve the decision below, clarify our statements in Bush regarding the nondisclosure of changed testimony, and direct that the judgment be reversed and the case remanded for a new trial.
It is so ordered.
SHAW, HARDING, ANSTEAD and PARIENTE, JJ., concur.
WELLS, C.J., dissents with an opinion, in which QUINCE, J., concurs.
WELLS, C.J., dissenting.
I dissent because: (1) the objection to the alleged Richardson[9] issue was not timely made in the trial court; (2) on the basis of the record in this case, any error in the failure to disclose the change in testimony of witness Green from that given in her description was harmless beyond a reasonable doubt; (3) I do not find in the Rules of Criminal Procedure a duty on the part of the State to have disclosed this oral statement; (4) in the district court, this case was controlled by this Court's decision in Bush v. State, 461 So.2d 936 (Fla. 1984), and the district court erred in failing to follow this Court's precedent; and (5) the opinion as to what does constitute a Richardson violation creates uncertainty as to what the trial judge is to do when a witness's testimony at trial is not precisely as given in an earlier deposition or written statement, i.e., how much and what quality of deviation requires a mistrial, how long must the State be alleged to have known of the changes in testimony, and what could be impeached by the prior statements and not require a mistrial. The variations in a witness's trial testimony from an oral statement made by the witness to the prosecutor minutes before going on the witness stand will more likely come in all shades of graynot in striking contrasts. *1184 That is the reason the Bush rule made sense.
I would quash the decision of the district court.
QUINCE, J., concurs.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] The thrust of Evans' defense during trial was self-defense.
[3] The trial court dismissed the unlawful possession of a firearm count during Evans' trial.
[4] Evans raises three additional issues for our review. Specifically, Evans asserts that (1) the trial court abused its discretion in denying a motion for mistrial concerning testimony given by Green other than her changed testimony; (2) the trial judge erred in denying Evans' motion to disqualify the trial judge; and (3) the prosecutor's allegedly improper closing argument warrants a new trial. These issues clearly are outside the scope of the conflict issue, and we decline to address them given our disposition in this case.
[5] In Henderson v. State, 763 So.2d 274 (Fla. 2000), we amended the language contained in rule 3.220(a), but the amended language does not affect this case.
[6] It should be noted, however, that this Court agreed with the trial court that the detective's testimony should not have been excluded, but this Court did so for reasons different than those expressed by the trial court. See Reese, 694 So.2d at 683.
[7] After holding as it did in Jones, the Fourth District certified the following question of great public importance to this Court:

DOES THE STATE, AFTER HAVING FURNISHED A STATEMENT TO A DEFENDANT PURSUANT TO RULE 3.220(a)(1)(ii), HAVE A CONTINUING DUTY UNDER RULE 3.220(f) TO INFORM THE DEFENDANT IF THE WITNESS NOTIFIES THE STATE OF HIS INTENTION TO MATERIALLY ALTER THE INFORMATION CONTAINED IN THE STATEMENT?
Jones v. State, 514 So.2d 432, 435 (Fla. 4th DCA 1987). Despite the presence of this certified question, however, the State did not petition this Court for review of the decision.
[8] Pursuant to rule 3.220(b)(1)(B), the State must provide a witness "statement" to the defendant, which specifically includes "all police and investigative reports of any kind prepared for or in connection with the case, but shall not include the notes from which those reports are compiled." Fla. R.Crim. P. 3.220(b)(1)(B). Thus, the discovery rules required the State in this case to provide Evans with any witness statement contained in a police or investigative report.
[9] Richardson v. State, 246 So.2d 771 (Fla. 1971).