PER CURIAM.
After Russell Elmer’s convictions for capital sexual battery of his step-daughter were reversed on appeal, he pled no contest on remand to three counts of attempted sexual battery and agreed to pay restitution for the victim’s medical expenses and counseling. He now appeals the final restitution order, arguing first that the record does not demonstrate that he knowingly, intelligently, and voluntarily waived his presence at the hearing. Although the *1135 State correctly concedes error, neither party addresses the issue of whether this unpreserved error is fundamental. It is not. Although such error is often fundamental, case law holds that it is not fundamental when the defendant agrees to pay restitution as part of a plea agreement, the defendant has notice of the hearing, and his counsel affirmatively waives his presence at the hearing. Accordingly, we affirm as to this issue. Elmer also attacks each component of restitution ordered as improper, but we find error only in the award of lost wages, which is conceded by the State. Finally, Elmer is also correct that the trial court erred in admitting the victim’s treatment records without first conducting a Richardson[1] hearing. Having reviewed the treatment records in light of the entire record, however, we conclude that the error in admitting the treatment records at the end of the restitution hearing was harmless beyond a reasonable doubt. No other issue merits discussion.
Relevant Facts
Elmer was arrested in 2010 for sexual crimes against his step-daughter that occurred before April 1989.[2] In 2011, he was tried and convicted of three counts of (capital) sexual battery upon a person under twelve years old. In 2012, this court reversed his convictions and remanded for a new trial. Elmer v. State, 114 So.3d 198 (Fla. 5th DCA 2012).
On remand in January 2013, Elmer entered into a plea agreement, pursuant to which he pled no contest to three counts of attempted sexual battery upon a person under twelve years old. He received five years in prison (with credit for time served), followed by 7.5 years of sex offender probation. As a condition of probation, Elmer agreed to pay “restitution to victim or victim’s family for any medical expenses and counseling — restitution amount is to be determined.”
It appears from the record that Elmer was released from prison shortly after his sentence was imposed. In February 2013, Elmer filed a motion to modify probation. The court minutes for the hearing on that case reflect that he was present, but not in custody. In May, Elmer’s probation officer asked the court to modify his curfew so that he could commute to work in Hernan-do County.
Court minutes for June 18, 2003, reflect that Elmer’s presence was waived for a restitution hearing, which was continued to July 16th. Court minutes for July 30th reflect that Elmer’s presence was waived for a restitution hearing in which restitution was ordered.
At the outset of the July 30th hearing, the following exchange occurred:
The Court: Russell Elmer. You’re waiving your client’s appearance?
[Defense Attorney]: I’m waiving my client’s appearance.
The 36-year-old victim testified that she was the victim of several sexual batteries by Elmer that occurred when she was younger than twelve years old. She suffered emotional and psychiatric problems requiring treatment. She first sought help in 2011 at The Refuge, an inpatient trauma rehabilitation center with intense counseling. She stayed there five weeks and was treated for post-traumatic stress disorder (PTSD).
*1136 Before entering The Refuge, she spent three days at The Vines, a detox facility, to detoxify from alcohol and Xanax dependence. Although The Vines did not address the causes of her addiction, The Refuge required her to detoxify there before entering its treatment program. Her addiction was her way of “dealing with the pain and the hurt.” The Vines charged her $2,200 and The Refuge charged her $18,480. Insurance did not cover those bills. She paid some of the bill for The Refuge, but there was an $11,000 balance outstanding. She signed a contract promising payment.
The victim requested lost wages of $875 for herself and $2,205 for her husband while she was in treatment. The victim’s husband had to stay home from his lawn business with their five children while she was gone. On cross-exam, the victim admitted that she left her employment as a paralegal to enter treatment and did not return to the same employer afterward.
The victim also sought reimbursement for other expenses relating to her treatment, such as travel costs to and from treatment. In total, the State sought $24,252.42 in restitution, which the trial court ordered. In addition to the victim’s testimony linking these costs to Elmer’s crimes, the State called a certified trauma therapist and addictions professional from The Refuge, who helped treat the victim for PTSD, depression, anxiety and poly-substance abuse. This mental health professional linked the victim’s mental health and substance abuse problems to the .abuse that she suffered at the hands of Elmer. This witness also testified that the victim should have stayed longer at The Refuge, but did not have the financial resources to do so.
When the prosecutor attempted to introduce the victim’s treatment records from The Refuge, defense counsel objected because the prosecutor had not provided the records to him beforehand. The trial court found the victim’s treatment records to be cumulative of what had already been testified to by the victim and the mental health professional from The Refuge, and admitted the same.
In closing argument, defense counsel argued that although Elmer had agreed to pay restitution, case law mandated that such restitution was limited to what was proven to arise out of the offenses charged. Defense counsel argued that: (1) the amounts sought were “exorbitant” given that the crimes occurred about thirty years before; (2) there was “some connection” [between the crimes and restitution sought], “but all of it cannot be attributed to what happened thirty years ago” and the State failed to prove what percentage was attributable to Elmer’s conduct; (3) restitution for the victim’s lost wages was improper because she left her employment to go into treatment and did not return; and (4) restitution for the husband’s lost wages was improper because he did not have much lawn business in January.
The court ordered restitution for the entire amount sought, finding a “rock solid connection and nexus to the posttraumatic stress of which this woman suffers and the need for it to be taken care of at The Refuge, A Healing Place.” The court reiterated that it did not believe that the victim was trying to “‘get well’ at the instances of Russell Elmer,” but instead, “every single burden that has been visited upon” the victim resulted from “the criminality of Russell Elmer.”
After the court entered restitution orders, Elmer timely appealed. He then filed a motion to correct sentencing error pursuant to rule 3.800(b)(2). He argued that: (1) under the statute in effect at the time of the crime, only the victim could receive restitution, thus restitution for her *1137 husband’s lost wages was improper; and (2) under that same statute, restitution for the victim’s lost wages was only proper if the victim suffered bodily injury from the crime, which did not occur in this case. Upon being ordered to respond, the State conceded that the victim’s husband’s lost wages were not awardable, but asserted the victim’s lost wages were appropriate because the applicable statute did not require bodily injury. The court agreed with the State’s position, striking the lost wages for the victim’s husband, but retaining them for the victim.
Waiver of Elmer’s Presence at Hearing
Elmer argues, and the State agrees, that the trial court reversibly erred by conducting a restitution hearing without determining if Elmer’s waiver of presence was knowing, intelligent and voluntary. Defendants have a constitutional right to be present at all stages of a criminal proceedings, including restitution hearings. J.C. v. State, 1 So.3d 1196, 1197 (Fla. 5th DCA 2009). The State has the burden to show that the defendant knowingly and voluntarily waived his right to be present, either by an express waiver or as implied by the circumstances of his voluntary absence. Id. Although a defendant may waive this right and exercise constructive presence through counsel, the court must determine that the defendant’s waiver is knowing, intelligent, and voluntary. Knespler v. State, 72 So.3d 299, 300 (Fla. 4th DCA 2011); M.W.G. v. State, 945 So.2d 597, 600 (Fla. 2d DCA 2006). The right to be present is a basic right that the defendant’s attorney cannot waive without the fully informed and publicly acknowledged consent of the defendant. Taylor v. Illinois, 484 U.S. 400, 418 n. 24, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); see also 22 Fla. Prac., Criminal Procedure § 12:2 (2014 ed.) (“Accordingly, a trial judge may not accept the simple representation of a defense attorney that his client has waived his right to be present at a stage of a criminal proceeding at which the defendant has the right to be present. Instead, the judge may lawfully conduct the proceeding only upon establishment on the record that the defendant has knowingly, intelligently, and voluntarily waived his right to be present.”).
In this case, the trial court simply asked defense counsel if he waived Elmer’s presence and defense counsel said yes. The State concedes that it did not establish that Elmer either expressly waived his presence or voluntarily absented himself. And, both parties agree that reversal and remand for a new restitution hearing is appropriate. Despite the parties’ agreement on the need to reverse, neither party addresses the obvious procedural bar, which is that this issue was not preserved below, either at the restitution hearing or in Elmer’s rule 3.800(b) motion. None of the cases above that reversed on the merits discussed preservation or fundamental error. See Knespler, 72 So.3d at 300; J.C., 1 So.3d at 1197; M.W.G., 945 So.2d at 600.
In general, an unpreserved error may be considered on appeal only if the error is fundamental. Rosado v. State, 129 So.3d 1104, 1108 (Fla. 5th DCA 2013). This general rule also applies to sentencing errors, like this one, that occur during the sentencing process and are therefore not required to be raised in a rule 3.800(b) motion. Id. Fundamental error in this context must equate to a denial of due process. Id.
This court has stated that “[generally ... any error in denying a defendant his or her right to be present at a critical stage of any proceeding is fundamental error.” Blair v. State, 25 So.3d 46, 48 (Fla. 5th DCA 2009). However, Blair *1138 dealt with a defendant being absent on the final day of trial, which is expressly designated a critical stage of trial in Florida Rule of Criminal Procedure 3.180. Even violations of rule 3.180 do not automatically require reversal. Instead, “[t]he issue presented in circumstances involving purported violations of rule 3.180 is whether fundamental fairness has been thwarted which determines ‘whether the error is reversible.’ ” Blair, 25 So.3d at 48 (quoting Pomeranz v. State, 703 So.2d 465, 471 (Fla.1997)). Although a restitution hearing is a stage of a criminal proceeding for which a defendant has a right to be present, it is not expressly listed in rule 3.180 as a critical stage.
Three cases on point are all from the Fourth District and none considered such error fundamental. In Whitten v. State, 830 So.2d 247 (Fla. 4th DCA 2002), the defendant agreed to pay restitution and waived causation as to that restitution in his plea agreement. At a restitution hearing, his attorney objected to the amount sought and also to the defendant’s absence. The defendant appealed the resulting restitution orders. The appellate court began its analysis by noting that “[a] defendant has the right to be present at the restitution hearing, but he must expressly object to preserve the error for appeal.” Id. at 248. The court reversed and remanded for a new hearing in part because “the defendant objected to the hearing being conducted in his absence.” Id.
Whitten relied on Schotsch v. State, 670 So.2d 127 (Fla. 4th DCA 1996). In that case, the defendant agreed to pay restitution in his plea agreement, with the amount to be determined at a hearing. At the restitution hearing, “defense counsel affirmatively waived defendant’s presence on the record.” Id. at 128. The defendant appealed the restitution order based on his not being present and the lack of evidence supporting the amount. The appellate court affirmed. Regarding his lack of presence argument, the court stated:
Without an objection to defendant’s absence having been raised at the restitution hearing, and in light of defendant’s plea agreement and defense counsel’s affirmative waiver, defendant did not properly preserve the issue. See Strickland v. State, 610 So.2d 705 (Fla. 4th DCA 1992). Due process is not implicated here where there has been an agreement by defendant to pay restitution, notice and an opportunity to be heard, and an affirmative waiver. Cf. Wood v. State, 544 So.2d 1004 (Fla.1989).

Id.

Finally, in Strickland, supra, the court agreed that the defendant could not complain about his absence from a restitution hearing for the first time on appeal because he agreed to pay restitution in his plea agreement, had notice of the restitution hearing, and his counsel did not expressly object to his absence due to confinement in prison. 610 So.2d at 706-07. We agree with the Fourth District’s fundamental error analysis in this context, and hold that where a defendant affirmatively agrees to pay restitution as part of his or her plea agreement, has notice and an opportunity to be heard at the subsequent restitution hearing, and has his or her presence at the restitution hearing affirmatively waived by counsel on the record, reversal is not required based upon the defendant’s lack of presence at the hearing.
In the instant case, Elmer expressly agreed to pay restitution to the victim for “any medical expenses and counseling” as part of his negotiated plea. Elmer was clearly given notice of the hearing date and time through counsel, and has never asserted that he did not receive notice nor argued lack of notice as a basis for rever *1139 sal. Finally, Elmer’s attorney “affirmatively waived” his presence on the record. Elmer does not argue fundamental error and the record does not support a finding of fundamental error. Accordingly, we find no basis for reversal as to this issue.
Restitution for the Victim’s Lost Wages
Elmer argues that the victim’s lost wages are not recoverable because the statute in effect at the time of the crime limited such recovery to cases involving bodily injury. See § 775.089(2)(c), Fla. Stat. (1988) (“When an offense has resulted in bodily injury to a victim, a restitution order entered pursuant to subsection (1) shall require that the defendant: ... (c) Reimburse the victim for income lost by such victim as a result of the offense.”). This argument was preserved and the State properly concedes error. See Garay v. State, 708 So.2d 631, 633 (Fla. 5th DCA 1998) (“[T]his court has held that lost profits or income are not recoverable under the 1993 version of the restitution statute, in the absence of bodily injury.”); Osteen v. State, 616 So.2d 1215 (Fla. 5th DCA 1993). Accordingly, we reverse the lost wages portion of the restitution order.
Admission of Treatment Records
Elmer argues that the trial court erred in admitting the victim’s treatment records without first conducting a Richardson hearing. The State asserts, inter alia, that Elmer is not entitled to any relief because he has not demonstrated any prejudice from the admission of the victim’s treatments records, that error, if any, was harmless beyond a reasonable doubt. When the State’s failure to comply with its discovery obligation is brought to the court’s attention, the court must conduct a Richardson hearing to determine if the defendant has been prejudiced. State v. Evans, 770 So.2d 1174 (Fla.2000); Stimus v. State, 886 So.2d 996 (Fla. 5th DCA 2004). A court’s failure to conduct a Richardson hearing can be found harmless only if the appellate court can determine, beyond a reasonable doubt, that the defense was not procedurally prejudiced by the discovery violation. Scipio v. State, 928 So.2d 1138, 1149-50 (Fla.2006). Procedural prejudice in this context means whether the defense was materially hindered in its trial preparation and strategy by the discovery violation. Id. In this case, the record is sufficient for us to conclude that the defense was not prejudiced by the discovery violation because the records were, as recognized by the trial court, simply cumulative of the testimony of the witnesses who were timely disclosed by the State as to: (1) the victim’s diagnosis, (2) her history of sexual abuse by the defendant from ages eleven to fifteen, and (3) the causal relationship between the defendant’s sexual abuse and her substance abuse beginning at age twelve.
Conclusion
In summary, we affirm the restitution in all respects except for the amount included for the victim’s lost wages during her treatment. On remand, the trial court is directed to issue a new restitution order that excludes the lost wages amount.
AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH DIRECTIONS.
PALMER, LAWSON and BERGER, JJ., concur.

. Richardson v. State, 246 So.2d 771 (Fla.1971).

. The victim initially reported the abuse to her mother and to police in 1995, when she was fifteen years old, but Elmer was not arrested until 2010, after he had admitted the abuse to the victim in a controlled phone call.